# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY,

### OCTOBER TERM, 1858.

## RUNYON vs. GROSHON.

The question, whether a mortgage of personal property, when the property is left in the possession of the mortgagor, is void under the statute of frauds, against creditors, or a *bona fide* purchaser without notice, has not received any such judicial construction as to make it *res adjudicata* in this state.

Nothing further can be reached, by way of rule on this subject, than that possession in the vendor is *prima facie* evidence of fraud, but may be explained; and that this is a mere rule of evidence calculated to shift the *onus probandi* from the creditor to the vendee.

The owner of a picture, then on exhibition in New York, executed in this state a mortgage of it, as a security for a loan. The domicil of both mortgago and mortgagee was in this state. Subsequently the mortgagor sold, in New York, the picture to a *bona fide* purchaser without notice. By the laws of New York, a mortgage of chattels remaining in the possession of the mortgagor is void, as against subsequent purchasers in good faith, unless filed in the office of the register, &c. The vendee having brought the picture into this state, this bill was filed to foreclose the mortgage.

*Held,* that the mortgage was valid, as against the subsequent purchaser without notice, as the possession of the mortgagor was consistent with the transaction, and explained to the satisfaction of the court.

A transfer of personal property, which is good by the law of the owner's domicil, is valid wherever the property may be situate.

Where the laws of two states are brought into conflict, the rule is, that the laws prevailing where the relief is sought must have the preference.

*T. Runyon*, for complainant.

*J. P. Bradley*, for defendant.

THE CHANCELLOR. September 30th, 1854, Rembrandt Lockwood, an artist, and resident of the city of Newark, being the author and owner of a painting known as "Lockwood's last judgment," then on exhibition in the city of New York, where it had been taken by Lockwood for that purpose, borrowed of the complainant three hundred dollars, and secured the payment of the same by his note, payable on demand with interest, and a mortgage on the picture. The whole transaction took place in the city of Newark, and that was the domicil of both parties. The mortgage was in form an absolute bill of sale of the painting to the complainant, with a proviso, to be void on payment of the loan with interest, according to the tenor of the note.

The note being unpaid, and the picture having been brought back into the state, the complainant filed his bill upon his mortgage.

The defendant, Jeptha C. Groshon, by his answer, claims to be the absolute owner of the picture, under a bill of sale executed by Lockwood to him in the city of New York, February 15th, 1855, the picture then being there in consideration of an agreement then and there made between them, that the defendant should pay certain rent for the use of the hall where the picture was then on exhibition, for which the defendant and one Owen McFarland were responsible as Lockwood's securities. The defendant afterwards paid the rent, which amounted to $2280, and took possession of the picture, and brought it to New Jersey. At the time of this transaction, the domicil of Lockwood and that of Groshon was in New Jersey. The defendant insists that he had no notice of the mortgage or loan; that the mortgage was not registered in New York; and that, by the law of

New York, the mortgage is void as to the sale to him; and that this law protects his title against the mortgage.

The following is the law of New York referred to.

"§ 9. Every mortgage, &c., of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a copy thereof, be filed, as directed in the succeeding section of this act.

§ 10. The instruments mentioned, &c., shall be filed in the several towns and cities of this state where the mortgagor, if a resident of this state, shall reside at the time of the execution thereof; and if not a resident, then in the city or town where the property so mortgaged shall be at the time of the execution of the instrument. In the city of New York, such instrument shall be filed in the office of the register of said city," &c.

The cause is set down for final hearing upon bill and answer and a written agreement of the parties.

The answer raises two questions for the decision of the court—*First*, is a mortgage of personal property, where the property remains in the possession of the mortgagor, void, under the statute of frauds, against creditors or a *bona fide* purchaser without notice of the mortgage? This question, while frequently occurring in our courts, has not received any such judicial construction as to make it *res adjudicata* in this state. In *Hall* v. *Snowhill*, 2 *Green's Rep.* 15, the question was argued, but its determination was not necessary for the disposition of the cause as it was presented to the court, and the court expressly declined deciding the question. The *Chief J.*, assenting to the fact, that the counsel in support of the mortgage had argued very ably and elaborately the question of the validity of a mortgage, or a bill of sale in the nature of a mortgage of personal property, where the property remains with the donor, goes on to say—"but the court is

not called upon in this case to add another to the already almost numberless, and in many instances irreconcilable decisions that have been made by the courts in England and in this country on the subject of bills of sale. A mortgage, a gift, a bill of sale of chattels, whether accompanied with possession or not, is valid and effectual as between the parties." And *Justice Ford,* in the same cases, says—"after this question had agitated Westminster-hall for many years, it was supposed to be settled by the twelve judges in the case of *Edwards* v. *Harben,* 2 *T. Rep.* 587. They held that, unless possession accompanies and follows the deed, it is void in law against creditors ; but if it contain a condition that the vendee is not to have possession till he performs a certain act, his remaining out of possession till that act is performed is consistent with the deed, and does not avoid it. To the same effect is *Hamilton* v. *Russell,* 1 *Cranch* 316, and *Chumar* v. *Wood,* 1 *Halst.* 155, as far as any opinion was expressed. But so many exceptions have since been received to this rule, that the rule itself has been extensively questioned both in England and in the United States. See 2 *Stark. Ev.* 158, and *Bissett* v. *Hopkins,* 3 *Cow.* 166, wherein most of the cases are collected. In *Bedlam* v. *Tucker,* 1 *Pick.* 389, the court say, 'it has always been held in this state (Massachusetts) that the possession of the vendor after a sale is only *evidence* of fraud, and not such a circumstance as, *per se,* necessarily invalidates the deed.' Whenever the question shall come fully before the court in this state, it will be time enough to consider whether any definite rule can be adopted except that in Massachusetts. But it does not arise in this case." I must consider this question, therefore, an open one, and shall decide it as such, having a proper regard, however, to what I conceive to be the understood opinion of the bench and bar upon it.

At common law, a deed of sale absolute, unaccompanied by possession, is good between the parties, but it is *void* as to third persons. This, of course, has the qualifi-

H*

cation, that the property is capable of delivery, as in the case of property on the ocean. And in such case there must be no unreasonable delay in assuming the possession so soon as the property is in a situation to make a delivery feasible. This has been considered the law of this state since the case of *Chumar* v. *Wood*, 1 *Halst. Rep.* 155. But a distinction has always been recognised between an absolute and a conditional sale. *Conard* v. *The Atlantic Insurance Company*, 1 *Peters' U. S. R.* 449. To what extent that distinction is to be carried, is the vexed question which has given occasion to the contrariety of views which have been entertained by eminent judges, and brought their judicial decisions into apparent, if not real conflict. It appears to me, however, that the mere fact of the bill of sale containing a condition upon which the sale shall be considered void ought not necessarily to make the deed valid. If so, the rule, that a conveyance of chattels unaccompanied with possession is void against third persons, it is utterly valueless. All the fraud doer, who makes his arrangement to defraud his creditors, need do, is to put in his fraudulent deed a condition, and the burthen is thrown upon the creditor to prove the fraud. There ought to be some protection to third parties where the chattels are permitted to remain in the possession of the vendor. Such possession should be considered *prima facie* evidence of fraud, and the party who claims the benefit of a mortgage under such circumstances should have the burthen thrown upon him of proving the *bona fides* of the transaction. He should be compelled to prove not only that his debt is a just one, but give reasons satisfactory to the tribunal who is to decide upon the validity of the deed for the nondelivery of the property. Such is the rule, as established in the case of *Bissell* v. *Hopkins*, 3 *Cowen's Rep.* 166, and is not at all in conflict with the views of the court in *Sturtevant* v. *Ballard*, 9 *Johns. R.* 339. In this last case there was a bill of sale of tools, in which was an agreement that the vendor was to have

the possession for three months. It was held invalid; but *Ch. J. Kent*, in delivering the opinion of the court, puts the decision on the ground that there was sufficient evidence of fraud, and that there was no satisfactory reason given for the possession remaining in the vendor. He says—" this is a voluntary sale, made by the debtor soon after the judgment against him, and made to a creditor partly for cash, and partly to satisfy an old debt. And why was the sale made three months before possession was to be delivered, if it was not to defeat the intermediate execution of the judgment creditor? There is no assignable reason appearing for the arrangement, and the time of delivery might have been postponed for three years, as well as for three months." He concludes his opinion by saying—" We may therefore safely conclude that a voluntary sale of chattels, with an agreement, either in or out of the deed, that the vendor may keep possession, is, except in special cases and for special reasons, to be shown to and approved of by the court, fraudulent and void as against creditors." There is a very learned note to the case of *Bissell* v. *Hopkins*. The cases are there collected; and I think the conclusion drawn from them is a just one, that nothing further upon this much litigated question ever can be reached by way of legal rule, than that possession in the vendor is *prima facie* evidence of fraud, but may be explained; that it is a mere rule of evidence calculated to shift the *onus probandi* from the creditor to the vendee.

In applying this rule as a test of the validity of the bill of sale in the case before the court, I must declare this conveyance valid, not between the parties only, but also as to third persons. The *bona fides* of the transaction is not disputed. It is not put in issue by the pleadings. The answer expressly admits the debt, as stated in the bill. The complainant did there, in good faith, loan to the defendant, in the manner stated by him, the sum of three hundred dollars, and took this mortgage on the pic-

ture for the purpose of securing its repayment. Was the possession consistent with the transaction? Is it explained to the satisfaction of the court why possession was allowed to remain in the mortgagor? I think it is. The chattel was a valuable picture. It was profitable for the purpose of public exhibition. In the possession of the mortgagor it was of daily value and profit. In the possession of the *mortgagee* it was of value to no one. It required care in its preservation, which the mortgagor only could bestow. The motive for leaving the picture in the possession of the mortgagor is explained. It was a laudable motive, and should, I think, be deemed satisfactory by the court.

This brings us to the other question involved in the case—is the validity of the complainant's mortgage affected by the law of the state of New York?

By the laws of New Jersey, the complainant's mortgage is valid as against the conveyance under which the defendant claims title to the picture. The general rule is, that a transfer of personal property, good by the law of the owner's domicil, is valid wherever it may be situate. But the state of New York had a perfect right to declare that the mortgage of the complainant should not protect the property against its *bona fide* alienation, unless it was recorded in that state. If the complainant was claiming in the courts of New York the benefit of his mortgage, the plea that the domicils of all parties, at the time of the transfers, were made in accordance with the laws of New Jersey would be of no avail to him. The state of New York has a perfect right to declare how personal property situate there shall be transferred. The property is protected by her laws, and it is but reasonable that it must be held and transferred agreeable to such regulations as that state may see fit to adopt.

But the complainant asks no protection for his mortgage from the state of New York. He did not see fit to claim the protection of her laws for the benefit of his se-

curity. He rested upon the laws of New Jersey. If the property had remained in New York he could not have enforced his security. But the transaction was in New Jersey. The transfer, although the property was in New York, was valid, because the domicil of the parties was in New Jersey, and the transfer was made in conformity to the laws of that state. The laws of New York and of New Jersey are brought into conflict. By the laws of New Jersey, the defendant took his conveyance subject to the complainant's mortgage. By the laws of New York, the complainant's mortgage is void as against the defendant's title. The complainant insists that the alienation of personal property must be determined according to the laws and regulations in force where the owner's domicil is situated. The defendant insists that the property being in New York at the time of the transfers the *lex rei sitæ* must prevail. In such case the rule must govern, that where such conflict of law occurs as one or other of the parties must give way, the laws prevailing where the relief is sought must have the preference. *Story's Con. of Laws,* § 385, 388.

In my opinion, the complainant's mortgage is not affected by the New York law. The complainant is entitled to a decree.